UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN D. JUSTICE

                Petitioner,              **DECISION AND ORDER**
                                               **No. 09-CV-6054T**

    -vs-

HAROLD GRAHAM, Superintendent


                Respondent.

_____

I.  **Introduction**

*Pro se* Petitioner John D. Justice ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254. Dkt. # 1. In the instant petition, Petitioner maintains that he should be in the custody of the New York Office of Mental Health ("OMH"), rather than the New York Department of Corrections ("DOCS").

Petitioner is in state custody as a result of a judgment of conviction entered January 14, 1993 in New York, County Court, Erie County. By that judgment, Petitioner was convicted of Manslaughter in the First Degree (N.Y. Penal Law ("Penal Law") § 125.20), Manslaughter in the Second Degree (Penal Law § 125.15), and two counts of Criminal Possession of a Weapon in the Fourth Degree (Penal Law § 265.01). For those crimes, Petitioner was sentenced to an aggregate indeterminate term of from thirteen and one-third to forty years.

1

**II. Factual Background and Procedural History**

    **A. Petitioner's Conviction**

In 1985, in Kenmore, New York, Petitioner, who was then seventeen-years old, stabbed to death his thirteen-year old brother as his brother returned home from school. Petitioner then stabbed to death his mother when she returned home from work. Next, Petitioner picked up his father from work in the family car, and stabbed him to death as his father entered their home. As Petitioner drove away quickly from the home, he crashed into a car driven by Wayne Haun ("Haun"), killing him.

Petitioner was charged with four counts of second-degree murder and four counts of fourth-degree criminal possession of a weapon. At trial, Petitioner asserted the affirmative defense of insanity. With respect to the murder charges for his father's and brother's deaths, the jury found Petitioner not-responsible by way of mental disease or defect. The jury, however, convicted Petitioner of intentional murder for his mother's death, and depraved indifference murder for Haun's death.

On direct appeal, the Fourth Department reversed the conviction on the ground that the trial court's supplemental jury charge was inadequate and misleading. Petitioner's two not responsible by reason of insanity verdicts remained intact. See People v. Justice, 173 A.D.2d 144 (4th Dep't 1991).

Petitioner was retried and convicted by a jury of first and second degree manslaughter, and two counts of fourth degree criminal possession of a weapon. On January 14, 1993, Petitioner was sentenced to an aggregate indeterminate prison term of from thirteen and one-third to forty years. The Fourth Department unanimously affirmed the judgment of conviction, and leave to appeal was denied. People v. Justice, 202 A.D.2d 981 (4th Dep't 1994); lv. denied, 83 N.Y.2d 968 (1994).

**B.  Petitioner's Parole Violation**

Petitioner was released to parole supervision from the Wende Correctional Facility on September 9, 2005. See Resp't Ex. A. Because Petitioner had been found not responsible by reason of mental disease or defect for two of the four homicide charges at his first trial, he also was subject to supervision by OMH. See Resp't Ex. B.

Pursuant to the conditions of his parole release, Petitioner was required to enter and complete mental health and anger management programs at the Butler Clinic. See Resp't Ex. A. By an agreement between OMH and the Division of Parole ("Parole"), Petitioner was also required to live at the Grace Ministry Halfway House in Buffalo, New York. See Resp't Ex. C. OMH assigned Petitioner to an outpatient psychiatric clinic, and coordinated those efforts with Parole and DOCS. Id.

3

Nearly eleven months after his release, on August 7, 2006, Petitioner violated his parole. On that date, he contacted his parole officer, stating that he was frustrated with his living situation at Grace House. Shortly thereafter, Petitioner's parole officer received a call from Grace House indicating that Petitioner had twice threatened to kill staff member Larry Blakely ("Blakely"). See Resp't Ex. D. When other staff members attempted to console Petitioner, he made additional verbal threats against them. After the parole officer arrived at Grace House, Petitioner admitted that he had verbally threatened staff members, and that he had done so in order to violate parole and return to jail to serve out the remainder of his sentence.

That same day, Parole executed a parole violation warrant, charging Petitioner with violating the conditions of his release. Specifically, Petitioner was charged for: (1) his failure to complete the requisite one year of the Butler Clinic's mental health counseling program; (2) his failure to complete the Butler Clinic's anti-aggression/anti-violence counseling; (3) threatening the safety and well-being of Blakely when Petitioner threatened to kill him; (4) threatening the safety and well-being of Grace House staff member Melvin Taylor ("Taylor") when Petitioner verbally threatened him with physical harm; (5) admitting to parole officers that he verbally threatened the safety and well-being of staff members at Grace House; (6) having been discharged from Grace House

Transitional Home due to verbally threatening its staff members; and (7) failing to complete the Grace House Transitional program as directed by his parole officer during an office visit. See Resp't Ex. D.

**C.   The State Habeas Petition**

Upon his arrest, Petitioner was placed in the Erie County Holding Center.  He waived his right to a preliminary parole revocation hearing.  While awaiting his final parole revocation hearing, Petitioner was evaluated by staff from the Buffalo Psychiatric Center.  See Resp't Ex. C.

Still prior to his final revocation hearing, Petitioner filed a *pro se* state petition for a writ of habeas corpus in New York Supreme Court, Erie County, dated March 28, 2007. See Resp't Ex. E.  In that petition, he contended, *inter alia*, that Parole had deprived him of due process rights because it denied him supervision by OMH, pursuant to his C.P.L. § 330.20(12) Order of Conditions.  After a hearing, the Supreme Court summarily denied the claim and dismissed the state habeas petition. See Resp't Ex. H.

Petitioner appealed the denial of dismissal of his state habeas petition.  See Resp't Ex. I.  By that date, however, the final parole revocation hearing had concluded, and Petitioner was no longer in the custody of the Erie County Holding Center.  Thus, on February 29, 2008, the Fourth Department dismissed the appeal as

5

moot. See Resp't Ex. J. Petitioner, nonetheless, sought leave to appeal, which was denied. See Resp't Exs. K, M.

Petitioner then sought leave to appeal directly from the New York Court of Appeals, which was denied on September 4, 2008. See Resp't Exs. N and P. Petitioner then petitioned, *pro se*, for a writ of certiorari in the United States Supreme Court, which was denied on January 12, 2009. See Resp't Ex. Q.

### D. The Parole Revocation Hearing

Petitioner's final parole revocation hearing took place on May 16-18, 23, 29 and June 4, 2007. Petitioner appeared, *pro se*, with an attorney acting as his legal advisor. See Hr'g Mins. [H.M.] of 05/16/07. At the outset of the hearing, Petitioner sought an adjournment on the ground that he had raised in his pending state habeas petition the issue of whether, due to his concurrent supervision by OMH, Parole had jurisdiction to incarcerate him and revoke his parole. Id. 4-6. The attorney for Parole argued that the state habeas petition had been dismissed, and Petitioner was pursuing a "separate issue" with OMH that did not impact the parole revocation proceedings. Id. at 6. The Administrative Law Judge ("ALJ") denied Petitioner's adjournment request, and informed Petitioner that the hearing would be limited to the issue of whether he had violated the conditions of his release to parole supervision. Id. at 7-9.

Petitioner argued that Parole did not have jurisdiction to incarcerate him for a parole violation. The ALJ found that she "ha[d] no jurisdiction" to consider "issues of joint supervision by two separate agencies." Id. at 10-13. The ALJ explained, on the record, that the parole revocation hearing itself was a vehicle by which Petitioner could "fully exercise [his] due process rights as they relate to the conditions imposed upon [him] by the Division of Parole," and that Petitioner could raise in the hearing any argument that his Parole conditions of release were "contradictory to or inconsistent with" those imposed by OMH. Id. at 14-15.

Ten witnesses testified at the hearing, including Petitioner, two mental health professionals, and four employees of Saving Grace Ministries, which operated the Grace Ministry Halfway House. The ALJ also admitted an audio cassette tape of Petitioner's personal audio diary entries made the week before and on the date he violated parole.

At the close of the hearing, and with the agreement of Parole, the ALJ dismissed charges one, two and seven. See H.M. of 06/04/07 at 74.

In a written decision dated June 20, 2007, the ALJ found Petitioner guilty of charges three through six. The ALJ revoked Petitioner's parole, and ordered that he be held until the maximum expiration of his sentence. See Resp't Ex. R.

7

**E. The Administrative Appeal and Related Article 78 Proceeding**

Petitioner administratively appealed the final parole revocation decision to the Division of Parole's Appeals Unit ("Appeals Unit"). See Resp't Ex. S. In his administrative appeal, he argued, *inter alia*, that due to the "conflicting, redundant, and competing jurisdictions" of Parole and OMH, Parole violated his due process rights by arresting him and incarcerating him pending adjudication of his parole violation. See Resp't Ex. T.

While his appeal was pending, Petitioner filed a *pro se* Article 78 petition in Supreme Court, Albany County, in which, *inter alia*, he sought to prevent the dismissal of his administrative appeal, and complained of a delay in receiving the final revocation hearing transcript. Parole opposed the Article 78 petition, and, on September 18, 2008, the Supreme Court denied the petition. The court found that Petitioner had received all of the parole revocation documents he had requested and that, with respect to any challenge to his parole revocation proceedings, Petitioner had not yet exhausted his administrative remedies. See Resp't Ex. U.

On June 8, 2009, the Appeals Unit recommended that the ALJ's decision be affirmed. See Resp't Ex. T. The Appeals Unit rejected Petitioner's lack of jurisdiction argument, finding that it was "inapposite and outside the scope of [Petitioner's] revocation proceeding and the appeal therefrom." See Resp't Ex. T at 17. The

Appeals Unit also concluded that Petitioner "never actually articulate[d] [the claim's] pertinence here." Id. Further, the Appeals Unit noted that, in his state habeas reply, Petitioner had conceded that both Parole and OMH had jurisdiction over him, but argued that it was illegal and unconstitutional for him to be placed in state prison while under court-ordered mental health treatment pursuant to a C.P.L. § 330.20 Order of Conditions. Id. The Appeals Unit found Petitioner's state habeas argument "difficult to reconcile," with his argument in his administrative appeal, and explained that it could not "see how any allegedly conflicting mandates would lead to, or excused him for, threats to Grace staff." Id. The Appeals Unit noted that Petitioner was not precluded from offering any such evidence at the final revocation hearing. Id. The Appeals Unit further held that Parole had jurisdiction over Petitioner as "a function of his sentence," which rendered Petitioner "necessarily subject to the conditions established by regulation, the Parole Board, and the Division, and he may have his release revoked for violation of same." Id. Although the Appeals Unit did not read the Supreme Court's denial of Petitioner's state habeas petition as instructing him to raise his due process claims at his final revocation hearing, it explained that "a Division ALJ would not have authority to decide, in the face of the Division's jurisdiction over a parolee, that

9

revocation proceedings are barred due to the involvement of another agency." Id.

### F. The Federal Habeas Corpus Petition

On February 6, 2009, before the Appeals Unit affirmed Petitioner's final parole revocation, Petitioner filed a *pro se* petition for habeas corpus (Dkt. #1), challenging "his arrest for alleged violation of parole." See Pet. ¶ 22A. In the petition, Petitioner does not contend that he did not violate the terms of his parole, or that Parole inappropriately revoked his parole. Rather, he argues that, after he violated parole, his detention by Parole violates due process and equal protection principles because he should be in the custody of OMH. See Pet. ¶ 22A; Supp. Memo. [Mem.] 1-6.

As the Court understands Petitioner's claim, after his initial release from prison in 2005, he was subject to dual supervision by Parole and by OMH. When Petitioner violated the conditions of his parole in 2006, he was placed in the Erie County Holding Center and subsequently filed a state habeas petition (before his parole was finally revoked), raising the claim he now raises in the instant federal habeas petition. According to Petitioner, the state habeas court directed Petitioner to raise these claims at his final parole revocation hearing. When Petitioner did so, however, the ALJ ruled that these claims were outside the jurisdiction of Parole. As a result, Petitioner complains that he was left with "no

10

administrative remedies" in which to pursue his current claims. See Mem. 1-3.

After Petitioner was transferred from the Erie County facility to the custody of DOCS, he argues that the state habeas court improperly concluded that his current claims were moot. Thus, Petitioner claims that he now has no available state mechanism by which to raise his claim. See Mem. 3-4.

The basis for Petitioner's claim, however, is that he "just as easily could have been sent to an OMH facility for treatment instead of being returned to prison by Parole for alleged parole violation." See Mem 5. Petitioner frames his allegedly incorrect state custody placement as a due process violation, explaining that there is no procedural mechanism "to determine what state agency should have overriding jurisdiction," and thus Parole "acted unilaterally" and improperly when it arrested and detained him upon his parole violation. See Mem. 5-6.

**G. Petitioner's Motion to Amend the Habeas Corpus Petition**

On October 27, 2009, Petitioner filed a second habeas corpus petition in this Court. Dkt. # 27. This Court construed the second petition as a motion to amend the original habeas corpus petition. The Respondent opposed Petitioner's motion. Dkt. # 30. Petitioner's motion to amend is currently pending before this Court. Dkt. # 27.

In the second habeas corpus petition, which is accompanied by a 539-paragraph affidavit and a lengthy supporting memorandum, Petitioner appears to argue the following: (1) in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Parole and the State of New York have deliberately obstructed his efforts to obtain the documentation necessary to exhaust his state remedies challenging the parole revocation; (2) that his parole revocation hearing was improper based on, *inter alia*, that a cassette tape was improperly admitted at the hearing and was illegally seized from Petitioner, the ALJ employed "faulty criteria" in revoking Petitioner's parole, and that the revocation of his parole was "excessive." Dkts. # 27, 28.[1]

Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires." Littlejohn v. Artuz, F.3d 360, 362-64 (2d Cir. 2001). However, where a proposed amendment is meritless or would be futile, federal courts should deny leave. Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990). Habeas courts may also deny leave "in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." Littlejohn, 271 F.3d at 363; see also Foman v. Davis, 371 U.S. 178, 182 (1962).

---

[1] In association with his motion to amend, Petitioner also requests an evidentiary hearing.

After reviewing the voluminous amount of paperwork Petitioner has submitted in support of his motion to amend, the Court finds that it would be futile to grant leave. With respect to Petitioner's first claim -- that the transcript of his parole revocation hearing was "corrupted," and that state officials have somehow conspired, for vague reasons, to prevent him from challenging the revocation proceedings -- such a contention is not appropriately raised in a 28 U.S.C. § 2254 petition insomuch as Petitioner does not challenge his underlying criminal conviction or the parole revocation proceeding itself. See Preiser v. Rodriguez, 411 U.S. 475, 490 (1973) (habeas corpus is the proper mechanism to challenge the legality of confinement; a request for immediate or more speedy release from custody is the traditional purpose for habeas corpus). Thus, the Court denies Petitioner's request to amend the habeas corpus petition to include any racketeering claim(s). Similarly, amendment of the habeas corpus petition to include Petitioner's second claim -- that the parole revocation hearing was improper -- would also be futile. First, Petitioner has not demonstrated that he has properly exhausted this claim.[2]

---

[2] It is well-settled that a federal court may not consider the merits of a claim unless that claim was fairly presented to the "highest state court from which a decision can be had." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984); see also Picard v. Connor, 404 U.S. 270, 275 (1971). The exhaustion requirement applies equally to habeas actions challenging the revocation of parole. See Cook v. N.Y.S. Div. of Parole, 321 F.3d 274, 278 & n.3 (2d Cir. 2003). To exhaust federal habeas claims challenging a New York State parole revocation, a Petitioner must first file an administrative appeal with the Appeals Unit. See N.Y. Comp. Codes R. & Regs. 9 § 8006.1; Medina v. Berbarby, No. 07 Civ.

13

Second, and in any event, the claim is vague, conclusory in nature, and unsupported by relevant record evidence and/or legal authority. Rather, this claim -- much like his racketeering claim -- is primarily based on his personal belief that he is the target of a legal conspiracy, which has been set in motion and continues to be perpetuated by various state authorities. See Dkts. # 27, 28. Additionally, and rather notably, although he has "stylized" this claim as a challenge to the parole revocation hearing itself, it is, in sum and substance, the same argument he raises in his original habeas corpus petition, to wit: that he belongs in the custody of OMH, not DOCS. The Court therefore denies Petitioner's request to amend the habeas corpus petition to include a claim that his parole revocation hearing was improper.

Accordingly, Petitioner's motion to amend the habeas corpus petition is denied in its entirety (Dkt. # 27), and his request for an evidentiary hearing associated therewith is also denied.

The Court now turns to an analysis of the claim set forth in the original habeas corpus petition. For the reasons stated below, habeas relief is denied and the petition is dismissed.

---

1038, 2008 U.S. Dist. LEXIS 7754, *4 (N.D.N.Y. Feb. 1, 2008). Once that appeal is denied, a petitioner is then required to seek relief in state court by filing an Article 78 petition. Id.; Scales v. N.Y.S. Div. of Parole, 396 F.Supp.2d 423, 428 (S.D.N.Y. 2005); see also Pena v. Ellis, No. 07 Civ. 2736, 2007 U.S. Dist. LEXIS 93957, *8-9 (E.D.N.Y. Dec. 21, 2207); Morgan v. Fillion, No. 98 Civ. 986, 2000 U.S. Dist. LEXIS 2226, *10-15 (S.D.N.Y. Jan. 31, 2000). If the Article 78 petition is denied, a petitioner is then required to appeal that decision to the highest-available state court capable of reviewing that denial. See Scales, 396 F.Supp.2d at 428.

**III. Petitioner's Claim**

**Petitioner's Claim Is Not Appropriately Raised in a Federal Petition for a Writ of Habeas Corpus**

In his petition, Petitioner does not challenge the constitutionality of his final parole revocation hearing, nor does he dispute that he violated the terms of his parole. Rather, he argues that, when he violated the terms of his parole, Parole had no authority to re-incarcerate him and place him in the custody of DOCS. According to Petitioner, because of an alleged lack of administrative remedies resulting from what he perceives as a lack of jurisdiction, he was erroneously placed in the custody of DOCS when he should have been placed in the sole custody and supervision of OMH. See Pet. ¶ 22A; Mem. 1-6.

Notably, Petitioner does not dispute that he belongs in state custody. Instead, he simply argues, without citing to any supporting authority, that he should be confined in a different type of facility, under different conditions of confinement. As such, Petitioner's claim is inappropriately raised in a 28 U.S.C. § 2254 petition for a writ of habeas corpus.

In New York, after a parole violator is arrested pursuant to a Parole warrant, he is incarcerated pending a preliminary hearing to determine whether there is probable cause to believe that he violated the conditions of his parole. N.Y. Exec. Law §§ 259-i-(3)(a)(i ), (3)(f). Here, Petitioner contends that, once Parole

issued its warrant charging him with violating the conditions of parole, he should have remained in the custody of OMH, and not been re-incarcerated. That claim is not appropriately raised on federal habeas review.

As the Supreme Court has held, state inmates may challenge the constitutionality of state parole procedures via a 42 U.S.C. § 1983 complaint seeking declaratory and injunctive relief. Wilkinson v. Dotson, 544 U.S. 74 (2005). By contrast, "the traditional scope . . . [and] heart of habeas corpus" includes claims seeking either immediate release from confinement or a reduction in future confinement. See Preiser, 411 U.S. at 498-99 & n.14 (distinguishing section 1983 actions from section 2254 habeas actions, but noting that additional and unconstitutional restraints imposed during lawful custody may be challenged in a habeas corpus proceeding); see also Heck v. Humphrey, 512 U.S. 477, 481-82 (1994) (a prisoner's action challenging the validity or length of confinement must be brought in a habeas corpus action, but a challenge to the conditions of confinement should be brought under section 1983 so long as the relief sought does not have the effect of invalidating the underlying conviction).

Here, Petitioner does not argue that he is entitled to release; instead, he claims that his joint supervision by both Parole and OMH at the time of his parole violation meant that he should not be incarcerated but, rather, should be under the custody

16

of OMH. As such, the Court finds that Petitioner's claims are not within the ambit of traditional habeas corpus claims, and the Court dismisses them.

**IV. Conclusion**

For the reasons stated above, Petitioner's Motion to Amend is denied.

The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

In light of the dismissal of Petitioner's habeas corpus petition, his remaining pending motions are rendered moot and are therefore dismissed.

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with

United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

                                        S/Michael A. Telesca
                                _____
                                HONORABLE MICHAEL A. TELESCA
                                United States District Judge

DATED:     December 30, 2010
              Rochester, New York